1  Rodney J. Quigley, Pro per
   164 Valdivia Circle
2  San Ramon, CA 94583
   (925) 355-1681 vox
3  (480) 323-2499 fax



4              **UNITED STATES DISTRICT COURT**

5              **NORTHERN DISTRICT OF CALIFORNIA**

6  RODNEY J. QUIGLEY,                Case Number: C07-06145 JCS

7  Plaintiff,                        **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTION FROM:**

8       vs.                          1. **VIOLATIONS OF THE FAIR CREDIT REPORTING ACT AND FAIR DEBT COLLECTIONS ACT [15 USC §1601 ET SEQ]**
9  COX COMMUNICATIONS, INC., NEVADA
   CANCER CENTER, INC., ALLIED
10 COLLECTION SERVICES and NCC       2. **NEGLIGENCE**
                                     3. **DEFAMATION**
11 BUSINESS SERVICES, INC.           4. **FRAUD**
   Defendants                        **Jury Trial Demanded**
12

13 To the Hon. Joseph C. Spero and the defendants:

14      For his claims, plaintiff Rodney J. Quigley files first

15 amended complaint and alleges as follows:

16                    **Jurisdiction and Venue**

17 1.   Subject matter jurisdiction is correct in this forum

18 because some of the acts complained of herein are violations of

19 federal law. [28 USC §1331, 15 USC §1681p]

20 2.   Subject matter jurisdiction is also correct in this forum

21 because all defendants are diverse from the plaintiff and the

22 damage claim herein exceeds the jurisdictional minimum. [28 USC

23 §1332]

24 3.   The forum has personal jurisdiction over all defendants and

25 venue is correct because all defendants have substantial and

continuing business dealings in this district and the damages complained of herein arose in this district. [28 USC §1391(2),(3)]

### The Plaintiff

4. The plaintiff is a natural person over 21 years of age and is domiciled in California.

### Defendant Cox

5. Defendant Cox Communications, Inc. ["Cox"] is a Delaware corporation with principal offices in Atlanta, Georgia.

### The Nevada Cancer Center Defendants

6. Defendant Nevada Cancer Center Inc. ["Cancer Center"] is a Nevada corporation with principal offices in Las Vegas, Nevada.

7. Defendant Allied Collection Services is a Nevada corporation with principal offices in Las Vegas, Nevada.

8. Defendants Cancer Center and Allied Collection Services are privities and alter egos.

9. Allied Collection Services is an agent of Cancer Center and shall be referred to indistinguishably hereinafter as "Cancer Center" or separately as "Allied".

### Defendant NCC Business Services

10. Defendant NCC Business Services, Inc. ["NCC"] is a Florida corporation with principal offices in Jacksonville, Florida.

### Facts

#### The Cox Trade Lines

11. Plaintiff realleges ¶¶1-10.

12. On or about October 10, 2007, the plaintiff noticed two trivial trade lines reported on plaintiff's Transunion credit report. These trade lines were attributed to defendant Cox.

13. Both trade lines were denoted as "collection-charge off" accounts showing defendant Cox as the "original creditor".

14. Both trade lines were and are utterly false.

15. Rather, the plaintiff had been a Cox customer continuously since around 1994.

16. At the precise time the false trade lines were noticed by the plaintiff, the plaintiff was a current, paid-up customer of Cox with monthly bills averaging about $200.

17. An investigation revealed that Cox had referred at least one of these accounts to a collection agency as a "collection charge-off" before the account was actually "past due" under the terms of the contract between Cox and the plaintiff.

18. Ultimately, Cox's collection agencies agreed to remove the trade lines and return the account assignments to Cox.

19. However, Cox has not apologized nor has Cox admitted impropriety in this affair.

20. In fact, nothing stops Cox from re-assigning the wrongful accounts to a new collection agency creating a new round of litigation. Something has to be done before this happens.

### The Nevada Cancer Center Trade Line

21. Plaintiff realleges ¶¶1-20.

22. In a continuing saga of medical collections fraud, reported

within the plaintiff's "3-bureau" credit reports on or about February 10, 2008 is a trade line attributed to the Cancer Center defendants.

23.  The Cancer Center trade line is dated January 2008 and shows a "collection-charge off" in the amount of $117 whole United States dollars.

24.  The Cancer Center trade line is utterly false.

25.  During 2007 the plaintiff made many, many visits to Cancer Centers for a particular, specialized procedure.

26.  Each and every visit to the Cancer Center was covered by not one, but two full health insurance policies carried by Cigna and Aetna insurance companies [hereinafter, the "Carriers"].

27.  Defendant Cancer Center was a contract provider of services for the patients of each of the Carriers.

28.  Despite the contractual relationship requiring Cancer Center to accept Carrier payments as "payment in full" for services to the plaintiff, somehow, Cancer Center pressed additional false claim against the plaintiff in the amount of $117.

29.  Sometime around December 2007, plaintiff was contacted by Allied regarding the Cancer Center claim.  The plaintiff vigorously denied the claim and demanded that Allied verify the underlying account.

30.  Cancer Center failed to verify its $117 claim.

31.  Nevertheless Allied reported the unverified claim to all of

1 the major credit reporting agencies.

### NCC Business Services, Inc.

32. Plaintiff realleges ¶¶1-31.

33. In January 2007 NCC reported a trade line against the plaintiff in behalf of NCC's client, Camden Property Trust.

34. Subsequently, Camden Property Trust waived its claims against the plaintiff and ordered NCC to cease derogatory reporting against the plaintiff.

35. Nevertheless, without any justification an NCC operative made 28 inquiries for plaintiff's Transunion credit report between January 2007 and June 2007.

36. During a very unpleasant telephone call in January 2007, the same NCC operative previously threatened to "get" the plaintiff unless the plaintiff paid the claim.

37. Accordingly, without legal right or any business justification and with complete knowledge of the impact of his conduct, the NCC operative intentionally attempted to ruin plaintiff's credit score by reporting 28 invalid credit inquiries.

38. Records of the above NCC's inquiries remain on plaintiff's credit report to this day.

### Damages

### False Credit Reporting, Unfair Collections

39. Plaintiff realleges ¶¶1-38.

40. Reporting a trade line as a "collection/charge off" which

is not actually past due is a violation of 15 USC §1501 et seq, ["Fair Debt Collections Act" and "Fair Credit Reporting Act"].

41. Reporting a false debt in a trade line is a violation of 15 USC §1501 et seq, ["Fair Debt Collections Act" and "Fair Credit Reporting Act"].

42. Reporting a false debt because of negligent business practices in a trade line is a violation of 15 USC §1501 et seq, ["Fair Debt Collections Act" and "Fair Credit Reporting Act"].

43. Making inquiries for extortionate purposes or without substantial business justification is a violation of 15 USC §1501 et seq, ["Fair Debt Collections Act" and "Fair Credit Reporting Act"].

44. All defendants have engaged in one or more of the above listed [¶¶41-44] misdeeds.

45. Plaintiff prays for statutory damages for each offense and for actual damages for each offense according to proof.

46. Plaintiff asserts that actual damages from the NCC inquiries [see ¶35 above] alone meet the jurisdictional minimum of this forum.

**Negligence**

47. Plaintiff realleges ¶¶1-46.

48. The defendants owe plaintiff a duty to use reasonable care in preparing, managing and using consumer records.

49. The defendants failed this duty by reporting false claims against the plaintiff.

50. With minimal care, defendants could have ascertained the truth before harming the plaintiff.

51. The plaintiff has been harmed by defendants' misconduct in an amount that shall be shown by proof.

## Defamation

52. Plaintiff realleges ¶¶1-51.

53. The defendants knew, or should have known that defendants' claims against the plaintiff were false.

54. Nevertheless, the defendants reported falsely that the plaintiff was a deadbeat thus harming the plaintiff's finances and business.

55. With even the most minimal care, defendants did or should have ascertained the truth before reporting falsehoods to third parties about the plaintiff.

56. The plaintiff has been harmed by defendants' misconduct in an amount that shall be shown by proof.

## Fraud

57. Plaintiff realleges ¶¶1-56.

58. The defendants knew, or should have known that defendants' claims against the plaintiff were false.

59. Nevertheless, with scienter the defendants intentionally and falsely reported claims and inquiries against the plaintiff in order to extort payment for claims the defendants knew were invalid.

60. The plaintiff has been harmed by defendants' misconduct in

1 | an amount that shall be shown by proof.

**Equitable Relief, Costs**

61. Plaintiff realleges ¶¶1-60.

62. Plaintiff requests equitable relief including injunction, mandamus or temporary retraining orders as adjudged appropriate.

63. Plaintiff requests other relief determined proper and just by this court.

64. Plaintiff requests costs and attorney fees [if any].

65. Plaintiff demands a jury trial.

Date: 2-24-2008

Rodney J. Quigley

::
::
::
::
::
::
::
::
::
::
::
::
::
::